UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Rasul Choupanzadeh, Madineh
Sheikh, and I.C., minor,
        Plaintiffs,

        v.

Case No. 26-cv-0277-SM-TSM
Opinion No. 2026 DNH 073

Markwayne Mullin, Secretary, U.S.
Department of Homeland Security;
Joseph B. Edlow, Director, U.S.
Citizenship and Immigration Services;
Terri Robinson, Director, U.S.
Citizenship and Immigration Services
National Benefits Center; and
Marjolaine Geraghty, Acting Field
Office Director, U.S. Citizenship
and Immigration Services, Bedford,
New Hampshire Field Office,
        Defendants

**O R D E R**

Plaintiffs filed suit on April 9, 2026, challenging the

United States Citizenship and Immigration Services' (USCIS)

apparently indefinite (meaning effectively permanent) "pause" in

the adjudication of plaintiffs' long-pending applications for

work authorization and an adjustment of status.  Plaintiffs are

citizens of Iran who have lawfully resided in the United States

since 2021.  Their routine applications for employment

authorization documents (EAD) are being intentionally ignored

under two USCIS policy memoranda issued in December, 2025, and

January, 2026.  Those memoranda direct USCIS personnel to place

an indefinite hold on pending benefit applications submitted by nationals from 39 countries disfavored by the Executive, including Iran.

Plaintiffs have moved for emergency preliminary injunctive relief because adjudication of their EAD applications is essential to their continued employment in the United States, and, in the case of Sheikh, the viability of her medical residency program.  They ask the court to order defendants to promptly adjudicate their pending applications, and to issue Choupanzadeh and Sheikh an EAD within five days from the date of the Court's order.

Both plaintiffs and respondents agree that an evidentiary hearing is not required, and that resolution on the papers is appropriate.  Because plaintiffs have established that they are likely to succeed on the merits of their claims; that they are likely to be irreparably harmed absent injunctive relief; and that the balance of the equities weighs in their favor, their motion for a preliminary injunction is granted, in part.

**BACKGROUND**

The material facts, as described in plaintiffs' complaint and the affidavits accompanying their motion for injunctive relief, are not seriously disputed.

Rasul Choupanzadeh and Madineh Sheikh are married and have a small child.  They are citizens of Iran, but the family has lawfully resided in the United States since August 4, 2021, under the authority of federal law and F-1 and F-2 student visas issued by the United States government.  Rasul Choupanzadeh attended the University of Idaho, graduating with a doctorate in Electrical Engineering in December, 2024.  Choupanzadeh properly maintained his F-1 visa status while attending university, and his wife and their minor child maintained their F-2 visa status.

In April, 2024, while still enrolled at the University of Idaho as a doctoral student, Choupanzadeh filed an employment-based visa petition on Form I-140.  Choupanzadeh's Form I-140 was approved by USCIS on November 5, 2024.

After obtaining his Ph.D., Choupanzadeh applied to USCIS for authorization of temporary employment for Post Graduation Optional Practical Training ("OPT").  USCIS granted his application for OPT from January 20, 2025, through January 19,

2026.  Because Choupanzadeh's degree falls within what is commonly known as a STEM program (a program in science, technology, engineering, or math), so long as Choupanzadeh filed a request to renew his EAD card before it expired, he was automatically eligible for a 180-day extension.

On October 22, 2025, Choupanzadeh timely filed Form I-765 to extend his EAD, paying for USCIS's premium processing services to ensure it was renewed before expiration of the OPT automatic extension on July 19, 2026.  About a month later, on November 21, 2025, both plaintiffs applied to USCIS for adjustment of their status from "immigrant" to "lawful permanent resident" based on Choupanzadeh's approved Form I-140.  At that same time, Choupanzadeh and Sheikh also applied for EAD cards on Form I-765.  Those applications are pending but unaddressed, subject to the indefinite hold.  Choupanzadeh is employed by Amphenol, a technology company specializing in high-speed connector systems.

Plaintiff Madineh Sheikh is an international medical graduate – a physician still in training.  She has passed all required licensing exams, and recently "matched" into an Internal Medicine residency program at Berkshire Medical Center in Pittsfield, Massachusetts.  Her residency begins on July 1,

4

2026, with mandatory orientation scheduled to begin in mid-June. Without an EAD card, Sheikh may become ineligible for her residency (which includes "employment"), that, of course, would derail her medical training and professional development.

On December 2, 2025, while the plaintiffs' applications were pending, USCIS issued PM-602-0192, a Policy Memorandum entitled "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries."  That memorandum, inter alia, placed an adjudicative "hold" on all pending benefit requests from nationals of 19 different countries, including Iran.  It declared that the hold "will remain in effect until lifted by the USCIS Director through a subsequent memorandum."[1]  A month later, on January 1, 2026, USCIS issued PM-602-0194, a second Policy Memorandum, entitled "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries."  That memo confirmed that USCIS's December 2 Policy Memorandum guidance

---

[1]   PM-602-0192 references Executive Order 14161 issued on January 20, 2025, entitled "Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats."  That order "underscores the importance of vigilance during the visa issuance process to ensure that individuals approved for admission into the United States do not intend to harm Americans or compromise U.S. national interests." Varniab v. Edlow, No. 25-CV-10602-SVK, 2026 WL 485490, at *1 (N.D. Cal. Feb. 20, 2026).

remained in place, and expanded the list of countries whose nationals would be subject to the indefinite adjudication hold.

Adhering to the guidance provided in the December, 2025, and January, 2026, Policy Memoranda, USCIS ignored its statutory and regulatory obligations to adjudicate plaintiffs' applications.  Plaintiffs allege that USCIS's refusal to adjudicate their applications to adjust status and for EADs imposes irreparable harm on them.  Neither plaintiff can lawfully continue to work or commence work, or train as a resident physician without an EAD, and both will lose their jobs as well as suffer an unreasonable disruption of their professional development.  Without jobs, they will be unable to provide for their small child, or afford basic living costs.

Plaintiffs seek relief on an emergency basis under the Administrative Procedure Act, the Mandamus Act, and the Declaratory Judgment Act, and challenge the USCIS's processing "pause" on adjudication of their applications.  They ask the court to declare that USCIS's newly minted policies as described in the policy memoranda are arbitrary and capricious, contrary to law, and exceed defendants' statutory authority, and to grant appropriate relief.

**STANDARD OF REVIEW**

"A preliminary injunction is an extraordinary equitable remedy that is never awarded as of right."  Starbucks Corp. v. McKinney, 602 U.S. 339, 345-46 (2024) (internal quotation marks omitted).  The moving party bears the burden to demonstrate entitlement to injunctive relief.  See We The People PAC v. Bellows, 40 F.4th 1, 8 (1st Cir. 2022).

To obtain a preliminary injunction, a movant must demonstrate that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities is in their favor; and (4) an injunction is in the public interest.  US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC, 121 F.4th 339, 347 (1st Cir. 2024).  The "most important" factors are likelihood of success and irreparable harm.  District 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 207, 40 F.4th 36, 39 (1st Cir. 2022).  When, as here, the "government is the opposing party," the balance of equities and public interest factors merge.  Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021) (quotations omitted) (cleaned up).

**DISCUSSION**

Preliminarily, the government asserts that the court lacks subject matter jurisdiction over plaintiffs' claims because plaintiffs challenge discretionary agency decisions that Congress has expressly insulated from judicial review. According to the government, plaintiffs' challenge to USCIS's adjudication of their applications is barred by 8 U.S.C. § 1252(a)(2)(B)(ii), which reads, "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security ..."  28 U.S.C. § 1252(a)(2)(B)(ii).  Because plaintiffs seek to compel the Secretary's discretionary action, the government says, the court lacks jurisdiction.

But, of course, the government's position misapprehends the plaintiffs' argument.  Plaintiffs "do not contest the adjudication of their applications to adjust status or for employment authorization; instead, they seek review of the failure to adjudicate the application."  Bowser v. Noem, No. 26-CV-10382-AK, 2026 WL 555624, at *3 (D. Mass. Feb. 27, 2026) (addressing identical argument).  If a noncitizen's home country falls within the list of enumerated countries, any application

8

for benefits filed by that noncitizen is automatically subject to the indefinite processing hold.  There is no discretion involved.

The government made the same argument in Varniab v. Edlow, No. 25-CV-10602-SVK, 2026 WL 485490, at *7 (N.D. Cal. Feb. 20, 2026), a similar case pending in the Northern District of California where plaintiffs, married medical doctors from Iran, sought a preliminary injunction directing the government to complete adjudication of their pending applications for permanent residency and work authorization.  As here, plaintiffs' applications were indefinitely "on hold" pursuant to USCIS's policy withholding "final adjudication of applications for immigration benefits filed by persons from certain countries including Iran."  Varniab, 2026 WL 485490, at *1.  The court was not persuaded by the government's argument concerning Section 1252(a)(2)(B)(ii), writing:

> an overarching problem with Defendants' argument is that numerous courts have concluded that subsection (B)(ii) only precludes judicial review of decisions denying discretionary relief on individual applications and does not preclude judicial review of the Government's decision to categorically act or withhold action.  See, e.g., Miot v. Trump, -- F. Supp. 3d --, 2026 WL 266413, at * 17 (D.D.C. Feb. 2, 2026) (holding that "Subsection (a)(2)(B)(ii) poses no barrier to the Court's review" of decision of DHS Secretary to terminate Temporary Protected Status designation for Haiti); Doe v. Noem, 778 F. Supp. 3d

9

311, 332 (D. Mass. 2025), <u>vacated and remanded on other grounds</u>, 152 F.4th 272 (1st Cir. 2025) (holding that "categorical actions challenged here," which were decisions to terminate parole program for aliens from certain countries, were not precluded from judicial review by subsection (B)(ii)).

<u>Varniab</u>, 2026 WL 485490, at *7.  <u>See also</u> <u>Doe, et al. v. Trump, et al.</u>, No. 25-13946-JEK, 2026 WL at *15 (D. Mass. April 30, 2026) ("Like the adjustment of status regulations, these regulations contain an implicit requirement that work authorization applications be decided.  The adjudicative hold policy – which prohibits decisions on such applications – is fundamentally inconsistent with that regulatory command.  In addition, it is incompatible with the [Administrative Procedure Act's] requirement that agency action, including USCIS's consideration of adjustment of status applications and work authorization applications, 'conclude' 'within a reasonable time.'").

So too, here.  The government's argument is utterly unpersuasive because, as noted in <u>Bowser v. Noem</u>, 2026 WL 555624, at *4, "while it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all." (quoting <u>Tang v. Chertoff</u>, 493 F. Supp. 2d 148, 154 (D. Mass. June 26, 2007)).

10

Jurisdiction over plaintiffs' claims is, then, properly exercised.

## Likelihood of Success on the Merits

For the same reasons supporting the exercise of jurisdiction described above, plaintiffs are likely to succeed on the merits – the agency does not have discretion to indefinitely, or even for an unreasonable period of time, refuse to adjudicate benefit applications.

Indeed, it can probably be said with some confidence that plaintiffs have already succeeded.  Three days ago, on June 12, 2026, USCIS filed an affidavit in a nearly identical court challenge in the district of Rhode Island, in which the Agency described its compliance with that court's order declaring the same policies at issue here to be unlawful as violative of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and (C), and therefore vacated.  Dorcas Intl. Inst. of Rhode Island v. United States Citizenship & Immigr. Servs., No. 26-CV-132-JJM-PAS, 2026 WL 1622708, (D.R.I. June 5, 2026).  The Agency has apparently determined to "treat the vacated policies as if they are no longer in effect."  Dorcas, No. 26-cv-132-JJM-PAS, Document No. 41-1 (filed June 12, 2026).  But, while that development portends well for a forthcoming adjudication, there is no reason

11

to expect that these plaintiffs will not continue to suffer irreparable harm directly caused by the unlawful delay to this point.  They are at the brink of suffering irreparable injury, particularly with respect to Sheikh's potential loss of her medical residency.

**Irreparable Injury**

To be entitled to preliminary injunctive relief, plaintiffs must also show that they will be irreparably injured absent a preliminary injunction.  While the government contends that the harm alleged by plaintiffs is merely financial, the harm they allege actually goes well beyond financial harm.

Plaintiffs point out that neither can legally work in the United States until USCIS processes their applications.  Sheikh is slated to begin her medical residency in July, 2026.  If Sheikh does not obtain either an EAD card or her lawful permanent residence status, she will likely lose her residency.  She says that this loss would "cause irreparable harm to my medical career and eliminate a critical opportunity to contribute to the U.S. healthcare system, particularly providing healthcare services to underserved areas of Berkshire County." Document No. 6-2.  She further explains that the "medical resident position I have been matched for is strictly time-

12

sensitive and cannot be deferred.  If I am unable to begin my residency as scheduled, I will lose this opportunity entirely, resulting in immediate professional, financial, and emotional harm."  Id.

Plaintiffs further allege that, without jobs, they will be unable to meet their ongoing financial obligations, and may be forced to sell their car.  They also face "significant emotional distress caused by the loss of income and uncertainty regarding [their] family's future."  Document No. 6-1.

Plaintiffs have adequately established irreparable harm, as the "harm here extends beyond ordinary economic injury."  Bowser v. Noem, 2026 WL 555624, at *9 (quoting Miot v. Trump, 2026 WL 266413, at *36).  Both plaintiffs will not merely lose their jobs, but would also be "categorically barred from lawful employment."  Id.  And, most concerning, loss of Sheikh's residency training has the potential to completely alter the trajectory of her medical career, and her chosen profession. The "loss of that hard-earned opportunity will delay [Sheikh's] career in . . . medicine by at least a [full] year, causing significant and long-lasting damage to her professional development."  Pouri v. U.S. Dept. of Homeland Security, et al., No. 26-CV-1339, 2026 WL 1508425, at *9 (D.D.C. May 30, 2026).

13

In Pouri v. U.S. Dept. of Homeland Security, et al., 2026 WL 1508425, at *9, the plaintiff similarly faced the loss of her residency if USCIS failed to adjudicate her EAD application.  As here, the plaintiff either had to "start orientation on time or forgo the position altogether."  The court found irreparable harm, noting that "the loss of that hard-earned opportunity will delay Plaintiff's career in American medicine by at least a year, causing significant and long-lasting damage to her professional development."  Id. at *9.  Given plaintiff's "residency timeline and planned career path," the court concluded that plaintiff's "imminent loss of work authorization constitutes irreparable harm."  Id.

Along with several other courts that have considered the issue, this court concludes that the "loss of work authorization . . . constitutes irreparable harm."  Miot v. Trump, 2026 WL 266413, at *36.  See also Varniab, 2026 WL 485490, at *22; Bowser v. Noem, 2026 WL 555624, at *9; Behdin v. Edlow, No. 26-CV-00566-SVK, 2026 WL 1031079, at *25 (N.D. Cal. Apr. 16, 2026); Saghafi v. Edlow, No. CV GLR-26-100, 2026 WL 1127468, at *12 (D. Md. Apr. 24, 2026) (noting "multiple courts have found that the loss of opportunity to pursue one's chosen profession, including by limiting their professional opportunities, constitutes

14

irreparable harm.") (internal quotations omitted) (cleaned up).
That factor therefore weighs in favor of a preliminary
injunction.

**Balance of Equities and Public Interest**

Plaintiffs contend that the balance of equities favors them
because their requested injunction is limited in scope, and the
defendants "will suffer no damage by acting on and approving an
EAD for each Plaintiff which the USCIS is obligated to do."
Document No. 7 at 14.  The government responds that USCIS has a
strong public interest in promoting the statutes and regulations
immigrants and nonimmigrants must abide by when entering the
United States.  According to the government, granting plaintiffs
injunctive relief would thwart those interests.

As the plaintiffs point out, however, defendants fail to
identify any national security concerns relating to them, or
explain why American citizens need protection from the
plaintiffs, who have lawfully been in the United States since
2021 and have complied in all respects with the terms of their
non-immigrant status.  See Bowser v. Noem, 2026 WL 555624, at *9
("Defendants' invocation of national security concerns is even
less salient in the context of [the] Plaintiff[ ] in this case,
who ha[s] been living and [studying/]working in the United

15

States since [2013] and about whom Defendants have identified no specific national security concerns." (quoting Varniab, 2026 WL 485490, at *14)).  The government also fails to explain how withholding employment opportunities to noncitizens who have lawfully been admitted into and entered the United States is in the public interest.

The equities weigh decidedly in favor of injunctive relief.

**CONCLUSION**

There is no need to add "ruffles and flourishes" to the comprehensive legal analyses already provided by Judge McConnell, Dorcas, 2026 WL 1622708, and the other courts cited above.  The policies at issue here have been ordered vacated, and USCIS seems to have declared its intent to abandon implementation of those policies going forward, and treat the policies as if they do not exist.

In this case, unlike Dorcas, however, injunctive relief sufficient to protect the plaintiffs is necessary – there is no basis in this record to suppose that USCIS will swiftly address plaintiffs' pending application for EADs absent an order, which failure will precipitate the very harm the agency has put at

risk by its extended unlawful refusal to comply with the law as Congress has enacted it, with respect to plaintiffs.

No doubt, given the likely backlog of unadjudicated applications USCIS has caused by its unlawful actions, another extended period of time will be required before all long-pending applications before the Agency can be fully resolved and decisions administratively communicated – unfortunate, but a reality that cannot be ignored.

Accordingly, while the relief granted needs to be effective, it need not be unduly burdensome on the government if the burden can be tempered.  Therefore, the court enters the following preliminary injunctive relief:

Defendant(s) (USCIS) shall, within ten (10) days of the date of this order, fully adjudicate the long-pending applications for immigrant benefits filed by plaintiffs, if USCIS can do so without undue administrative effort that adversely affects consideration of benefit applications from others that have been pending for a longer time, or from those in more precarious situations with respect to imminent harm caused by the government's unlawful delay.

17

Should Defendant(s) (USCIS) not be able to fairly adjudicate the plaintiffs' applications within ten (10) days, the defendants are enjoined from enforcing any requirement respecting EADs or statutes or regulation that in any way interfere with or burden plaintiffs' abilities to be employed or live lawfully, or, with respect to plaintiff Sheikh, to fully participate in all aspects of her matched medical residency. And, if necessary, notice of this order shall be provided to the relevant hospital or program administrators and/or employers, freeing them of any legal obligation to comply with such enjoined requirements, and enjoining them from requiring any EAD or other indicia of authority from USCIS as a condition of employment or participation in a residency program, or any other aspect of lawful presence in the United States, until such time as USCIS adjudicates plaintiffs' applications, and provides formal notice of that adjudication to plaintiffs, and any administrative appeals taken are resolved.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 15, 2026

cc:  Counsel of Record

18